UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

    - against -

JOSE RODRIGUEZ,

                Defendant.

------------------------------------X

08 Cr. 1114-03 (RWS)

SENTENCING OPINION

**Sweet, D.J.**

        On November 8, 2011, Jose Rodriguez ("Rodriguez" or the "Defendant") pleaded guilty to one count of conspiracy to commit robbery, in violation of 18 U.S.C. § 1951, and one count of robbery, in violation of 18 U.S.C. §§ 1951 and 2. For the reasons set forth below, Rodriguez will be sentenced to 46 months' imprisonment to be followed by one year's supervised release. Sanchez will be required to pay a special assessment of $200.

**Prior Proceedings**

        On February 24, 2010, Jose Robles ("Robles"), Luis Celado a/k/a "Danny" ("Celado") and Rodriguez, a/k/a "Aneudi,"

1

were named in a six-count Indictment S1 08 CR 1114 (RWS) filed in the Southern District of New York. The Defendant is named in Counts 1 and 4 of the Indictment. Count 1 charges that from at least October 2005 through October 2006, in the Southern District of New York and elsewhere, Robles, Celado, and Rodriguez and others known and unknown, unlawfully conspired to rob various businesses engaged in interstate commerce, including Radio Shack stores and a gas station, in violation of 18 U.S.C. § 1951(b)(1).

Count 4 charges that on October 2, 2006, in the Southern District of New York, Robles, Rodriguez and one or more others robbed two employees while they were transporting the proceeds of the gas station where they worked in the Bronx, New York, in violation of 18 U.S.C. §§ 1951 and 2.

On November 8, 2011, Rodriguez appeared before the Honorable Robert W. Sweet in the Southern District of New York and pleaded guilty to Counts 1 and 4.

Rodriguez' sentencing is currently scheduled for April 10, 2012.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Guidelines. Thus, the sentence to be imposed here is the result of a consideration of:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed —

 (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

 (B)  to afford adequate deterrence to criminal conduct;

 (C)  to protect the public from further crimes of the defendant; and

 (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)  the kinds of sentences available;

(4)  the kinds of sentence and the sentencing range established for —

 (A)  the applicable category of offense committed by the applicable category of defendant as

set forth in the guidelines . . . ;

(5) any pertinent policy statement . . . [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Rodriguez' personal and family history.

**The Offense Conduct**

The following description draws from the PSR. The specific facts of the underlying conduct are adopted as set forth in that report.

4

From at least October 2005 through October 2006, several individuals, including Robles, Celado and Rodriguez, comprised a loosely knit group that committed armed robberies of business establishments in New York City. Radio Shack stores were a particular target of this group since Robles and Celado worked for Radio Shack, either prior to, or during the course of, the robberies. There was no known leadership structure within the group, but it appears that various individuals got together to participate in certain robberies.

On October 2, 2006, at approximately 10:00 a.m., Robles, Rodriguez and a co-conspirator robbed two employees of St. Michael Service Station, a gas station located at 102-08 Yonkers Avenue in Yonkers, NY. These two employees (the "Gas Station Victims") were in a vehicle that stopped at a red light near the corner of the Major Deegan Expressway and West 230th Street in the Bronx. Robles, Rodriguez and another co-conspirator, all of whom were traveling in a Nissan Quest and were following the Gas Station Victims' vehicle, exited their vehicle at the light and approached the other vehicle. Robles, Rodriguez and the co-conspirator then brandished firearms and demanded "the bag" from the Gas Station Victims. The Gas

Station Victims were on their way to a bank to deposit proceeds generated from St. Michael Service Station and another gas station, Height Star Service Station located at 4068 Third Avenue in the Bronx, NY. One of the defendants subsequently opened the back door of the Gas Station Victims' vehicle and removed the bag containing the proceeds. They also robbed one of the Gas Station Victims of her pocketbook, which contained an Apple iPod, Donna Karan sunglasses, a pair of earrings, credit cards, Social Security card, insurance card, checkbook, driver's license and other identification cards.

After robbing the Gas Station Victims, Robles, Rodriguez and the co-conspirator returned to their vehicle and fled the scene. Soon thereafter, the Gas Station Victims contacted the NYPD. In a complaint filed with the NYPD, the Gas Station Victims stated that $33,460 in cash was stolen during the robbery. Additionally, the female victim valued the stolen iPod at $540, the Donna Karan sunglasses at $250 and the earrings at $70.

On October 14, 2008, Robles was arrested by NYPD detectives, while Celado and Rodriguez were arrested on February 25, 2010. Rodriguez later surrendered to the Court on March 2,

2010, on a federal warrant issued on February 24, 2010.

Rodriguez is attributed with a loss of $34,270, based on his participation in the robbery of the gas station employees. He indicated that he was only involved in one robbery.

**The Relevant Statutory Provisions**

For Counts 1 and 4, the maximum term of imprisonment is 20 years, per count, pursuant to 18 U.S.C. § 1951.

For Counts 1 and 4, if a sentence of imprisonment is imposed, the Court may impose a term of supervised release of not more than three years, pursuant to 18 U.S.C. § 3583(b)(2). Such terms of supervised release are to run concurrently, pursuant to 18 U.S.C. § 3624(e).

For Counts 1 and 4, Defendant is eligible for probation of not less than one or more than five years, on each count, pursuant to 18 U.S.C. § 3561(c)(1).

For Counts 1 and 4, the maximum fine that may be imposed is $250,000 per count, pursuant to 18 U.S.C. § 3571. A special assessment of $100 per count, for a total of $200, is mandatory, pursuant to 18 U.S.C. § 3013.

**The Guidelines**

The November 1, 2011 edition of the United States Sentencing Commission Guidelines Manual has been used in this case for calculation purposes, pursuant to § 1B1.11(a). The Court finds the following with respect to Defendant's applicable offense level, criminal history, recognition of responsibility, and term of imprisonment:

Counts 1 and 4 are grouped together, pursuant to § 3D1.2(a), because the offense constitute the same victims and acts.

The guideline for a violation of 18 U.S.C. § 1951 is found in § 2B3.1. Pursuant to § 2B3.1(a), the base offense level is 20.

Pursuant to § 2B3.1(b)(2)(C), a five-level increase is

warranted because the Defendants brandished firearms during the course of the robbery. Furthermore, an additional one-level increase is warranted, pursuant to § 2B3.1(b)(7)(B), because the robbery caused a loss of more than $10,000, but not more than $50,000.

Based on his plea allocution, the Defendant has shown recognition of his responsibility for the offense. Pursuant to § 3E1.1(a), the offense is reduced two levels. Furthermore, an additional one-level reduction is warranted, pursuant to § 3E1.1(b), because the Defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to allocate its resources efficiently.

Accordingly, the applicable offense level is 23.

The Defendant has no known criminal convictions. This warrants zero criminal history points. A total of zero criminal history points establishes a Criminal History Category of I, pursuant to the table at Chapter 5, Part A, of the Guidelines.

Based on a total offense level of 23 and a Criminal History Category of I, the Guidelines range for imprisonment is

46 to 57 months.

The Guidelines range for a term of supervised release is at least one year but not more than three years, pursuant to § 5D1.2(a)(2).

Because the applicable guideline range is in Zone D of the Sentencing Table, the Defendant is not eligible for probation, pursuant to §5B1.1, Application Note #2.

The fine range for the instant offense is $10,000 to $100,000, pursuant to §§ 5E1.2(c)(3)(A) and (B). Subject to the Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,357.01 to be used for imprisonment, a monthly cost of $328.20 for supervision, and a monthly cost of $2,153.22 for community confinement.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a Guidelines sentence is warranted in the instant case.

**The Sentence**

For the instant offense, Rodriguez will be sentenced to 46 months' imprisonment to be followed by one year's supervised release.

Rodriguez is directed to report to the nearest United

States Probation Office within seventy-two hours of release to commence his term of supervised release. It is recommended that Rodriguez be supervised by the district of his residence.

As mandatory conditions of his supervised release, Rodriguez shall: (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; (4) refrain from any unlawful use of a controlled substance and submit to one drug testing within fifteen (15) days of placement on probation or supervised release and at least two unscheduled drug tests thereafter, as directed by the probation officer; and (5) cooperate in the collection of DNA as directed by the probation officer.

Furthermore, the standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special conditions:

(1) The Defendant shall comply with the conditions of home confinement for a period of eight months. During this time the Defendant will remain at his place of residence except for employment and other activities approved by the probation

12

officer. The Defendant will maintain a telephone at his place of residence without call forwarding, a modem, caller ID, call waiting, or portable cordless telephones for the above period. At the direction of the probation officer, the Defendant shall wear an electronic monitoring device and follow electronic monitoring procedures specified by the probation officer. Home confinement shall commence on a date to be determined by the probation officer. Should home confinement be imposed, the Defendant shall pay the costs of home confinement on a self payment or copayment basis as directed by the probation officer.

(2) The Defendant shall provide the probation officer with access to any requested financial information.

(3) The Defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless the Defendant is in compliance with the installment payment schedule.

(4) The Defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of

the conditions of the release may be found. The search must be conducted at a reasonable time and in reasonable manner. Failure to submit to a search may be grounds for revocation. The Defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

(5) The Defendant shall obey the immigration laws and comply with the directives of immigration authorities.

(6) The Defendant shall participate in a mental-health program approved by the U.S. Probation Office. The Defendant shall continue to take any prescribed medications unless otherwise instructed by the healthcare provider. The Defendant shall contribute to the costs of services rendered not covered by third-party payment, if the Defendant has the ability to pay. The Court authorizes the release of available psychological and psychiatric evaluations and reports to the health care provider.

A special assessment of $200, $100 for each count, payable to the United States, is mandatory and shall be due immediately.

14

Although it appears that the victims, which include the owner(s) of Height Star Service Station and St. Michael Service Station and two employees of Height Star Service Station, sustained actual losses as a result of the instant offense, they have not responded to the probation office's repeated requests for information made since December 2011. Therefore, since the actual loss amount has not been confirmed with the victims, and the names and contact information for the victims have not been obtained, no restitution is required.

It is ordered that the Defendant pay a fine of $10,000. The fine shall be paid in monthly installments of $400 over a period of supervision to commence 30 days after the date of the judgment or the release from custody.

The Defendant is viewed as a good candidate for voluntary surrender. He has kept all court appearances and has been in compliance with all terms and conditions of his pretrial release. He is not viewed as a flight risk or a danger to the community.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for April 10, 2012.

It is so ordered.

**New York, NY**
**April 4, 2012**

ROBERT W. SWEET
U.S.D.J.